IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

CHELSEA SHUBAT and
ALLISON R. SHUBAT,

                                  DEFAULT JUDGMENT
             Plaintiffs,                  ORDER

      v.                                      19-cv-588-wmc

CAVE ENTERPRISES OPERATIONS, LLC
d/b/a BURGER KING OF ASHLAND,

             Defendant.
_____

       This court held an evidentiary hearing on plaintiffs' motion for default judgment on October 2, 2019, following the clerk of court's entry of default as to the defendant Cave Enterprises Operations, LLC, dated August 29, 2019 (dkt. #8), at which plaintiffs and their counsel appeared by videoconference. The following opinion sets forth the basis for the court's award of relief to the plaintiffs in light of the record before it, awards relief in the order below and directs entry of final judgment against the defendant.

FACTS

       The following facts are derived from the allegations in the complaint (dkt. #1) -- now accepted as true), *see VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) -- the affidavits of plaintiffs (dkt. ##15, 16) and their counsel (dkt. #13), the accompanying exhibits, and plaintiffs' live testimony.

A. **The Parties**

1.  Plaintiff Chelsea Shubat ("Chelsea") is an adult resident of the state of Wisconsin, whose principal residence is located at 66385 Highland Road, Ashland, WI 54806.

2.  Plaintiff Allison R. Shubat ("Allison") is an adult resident of the state of Wisconsin, whose principal residence is located at 77832 Firebreak Rd., Saxon, WI 54559.

3.  Defendant Cave Enterprises Operations, LLC ("Cave Enterprises"), is a Foreign Limited Liability Company. For purposes of service of process, Defendant's Registered Agent is Business Filings Incorporated, whose mailing address is 8020 Excelsior Dr., Suite 200, Madison, Wisconsin 53717.

4.  Among some 100 similar stores, Cave Enterprises owns and operates a Burger King restaurant located at 122 Lake Shore Dr., E, Ashland, Wisconsin ("Burger King Ashland"). At all times relevant to this matter, Cave Enterprises employed in excess of fifteen (15) employees.

B. **Background**

5.  This action is brought under Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e, *et seq.*, Wis. Stat. § 111.31, *et seq.*, and Wis. Stat. § 103.13.

6.  The Court has jurisdiction over plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

7.  Venue is proper in, and defendant is subject to the personal jurisdiction of, this Court because it maintains facilities and business operations in this district, and all or

most of the events giving rise to this action occurred in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 200e-5(f)(3).

8. On or about August 3, 2018, plaintiffs filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Wisconsin Department of Workforce Development Equal Rights Division ("ERD"), alleging discrimination in the form of harassment and retaliation against defendant.

9. On October 17, 2018, the ERD investigator issued an initial determination of Probable Cause on Plaintiffs' complaints.

10. On May 31, 2019, the EEOC issued a Notice of Right to Sue letter to both plaintiffs for the allegations contained in their August 3, 2018 complaints.

**C. Unlawful Act of Unwelcome Sexual Advanced and Harassment**

11. Jesse Walitshek was the general manager at Burger King Ashland and responsible for all aspects of its day-to-day management during all times relevant to this action. Chad Hebert is the Regional Manager for Cave Enterprises and in charge of Human Resources oversight at Burger King Ashland during all times relevant to this action. Moreover, both were acting as agents and employees of Cave Enterprises during this same time frame.

12. Plaintiffs Chelsea Shubat and Allison Shubat were hired at Burger King in March and July of 2017, respectively, and Walitshek was Chelsea and Allison's direct supervisor during their employment at Burger King. Both had a history of methamphetamine abuse, including multiple convictions for possession, and in Chelsea's case distribution. Because both were actively participating in a Drug Court program,

3

Walitshek likely understood both their psychological vulnerability and the difficulties they would face in attempting to obtain another job as a convicted felon.

13. Starting in late August of 2017, Walitshek began making regular sexual comments and advances toward Chelsea and Allison, both in and out of the workplace, including repeated comments about his "dirty butthole," comments about his "dick," and comments that he "had a big dick." Chelsea Shubat is a lesbian, and Walitshek also made numerous comments about her sexual orientation, both on Facebook messages and in the workplace, and made comments about having three-way sex. On occasion, Walitshek would also sit on Chelsea's and Allison's laps while they were sitting at a desk during their work shift, which made them feel uncomfortable.

14. Around the same time, Walitshek also began a prolonged period of sexual harassment, including by sending sexually to Chelsea explicit Facebook messages, naked pictures of himself, and videos of him having sex with his ex-wife. He also made numerous comments to Chelsea that she had to keep all of these actions quiet in the workplace.

15. Throughout this course of harassment, Walitshek would also make repeated references to the fact that, despite his sexual comments and actions, he was still their boss. Walitshek also made clear that he expected both Chelsea and Allison to play along with his sexual comments and actions. When they did so, Chelsea and Allison would be treated favorably and often allowed to get off of their shifts early. When they refused to do so, Chelsea and Allison were scheduled for less-favorable shifts and were required to work late.

16. In December of 2017, Allison began to refuse to play along any further with Walitshek's sexual advances and harassment. Allison was terminated shortly after she

4

began consistently and actively refusing Walitshek's advances, although he advised that she might be considered for reinstatement after 30 days if she reapplied in writing.

17. In April of 2018, Chelsea relapsed on drugs, began failing to arrive at work on time, and decided she needed rehabilitation services. On April 26, Chelsea explained to Walitshek the reasons for her tardiness and explained she that was not able to work while she was getting rehabilitation services. Some three days later, Walitshek told Chelsea that she would be able to return to work once she was sober and able to work reliably. However, Walitshek did not fire Chelsea at that time.

18. On or about May 8, 2018, after reapplying at least twice, Allison spoke with Walitshek and another manager, Caitlin Krueger, who said that Allison was going to be re-hired to work at Burger King. At this time, Walitshek gave Allison her employee shirt back.

19. On May 12, 2018, however, Chelsea spoke with Walitshek's ex-wife, who had contacted her through Facebook. During that phone call, Chelsea disclosed that Walitshek had sent videos of her and Walitshek having sex. That same day, Walitshek followed up with Chelsea and said, "You're fucking with my life now . . . . You're done. Leave me and my store alone."

20. Later that same day, May 12, Chelsea then contacted regional district manager Hebert and told him everything that had occurred, including what she believed constituted Walitshek's ongoing harassment and retaliation against her. Hebert responded that he was busy but would try to set up a time to meet on May 22, 2018. However, Hebert asked no follow up questions of Chelsea during that call and she never heard back

from Hebert. Hebert failed to investigate Allison's and Chelsea's complaints of sexual harassment adequately.

21. When Walitshek heard that Chelsea had contacted his manager Hebert about this matter, he also told Allison, "I don't want you and your fucking sister in my fucking store after all of the shit you have started." When Allison responded, "maybe I should talk to Chad [Hebert]," Walitshek then said, "don't worry, your sister already did."

22. Neither Allison nor Chelsea have been rehired by Burger King since their terminations on or about May 12, 2018.

OPINION

I. **First Cause of Action (Sexual Harassment in Violation of Title VII)**

Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their sex. As set forth above, defendant, through its Burger King Ashland store manager Walitshek (and to a lesser extent, through Hebert's failure to follow up as the regional manager) harassed, terminated, and refused to rehire plaintiffs on the basis of their sex. As a direct result of these violations of Title VII, plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, including loss of wages and psychological abuse. Moreover, defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to plaintiffs' right to be free from sexual harassment. Plaintiffs are also entitled to their reasonable attorneys' fees and costs of suit.

**II.     Second Cause of Action (Hostile Work Environment in Violation of Title VII)**

As set forth above, plaintiffs were also subject to ongoing harassment by defendant's agent and employee Walitshek because of their sex in violation of 42 U.S.C. § 2000e-2(a), including verbal, physical, and written conduct that were sexual and offensive in nature, all of which was unwelcomed by plaintiffs.  Walitshek also used his position of power as plaintiffs' direct manager to coerce them into tolerating and playing along with this sexually offensive conduct.  This conduct was so severe or pervasive that reasonable persons in plaintiffs' positions would find their work environment to be hostile or abusive.  Further, both plaintiffs believed their work environment to be hostile or abusive as a result of Walitshek's ongoing misconduct.

Plaintiffs provided management level personnel, including manager Walitshek and regional manager Hebert, with enough information to raise a probability of sexual harassment in the mind of a reasonable employer. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Nevertheless, Hebert failed to adequately investigate plaintiffs' claims of discrimination, and defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of sex, nor did it exercise reasonable care to correct promptly the harassing behavior that did occur.  As a result of defendant's unlawful action and inaction, plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, including loss of wages and psychological abuse.  Moreover, defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to plaintiffs' right to be free from discrimination based on sex and gender.  Plaintiffs are also entitled to their reasonable attorneys' fees and costs of suit.

## III. Third Cause of Action (Retaliation in Violation of Title VII)

Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiffs made both informal and formal complaints to defendant's agents and employees Walitshek and Hebert that opposed defendant's unlawful and discriminatory employment practices based on gender and sex. As a result of those complaints, defendant's agent and employee Walitshek took materially adverse actions against them, including assigning plaintiffs' less-desirable shifts, extra work, termination and refusal to re-hire. These adverse actions constituted retaliatory workplace harassment and were sufficient to deter a reasonable person from engaging in protected activity under Title VII. As a direct result of defendant's retaliation, both plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, including loss of wages and psychological abuse. Plaintiffs are also entitled to their reasonable attorneys' fees and costs of suit.

## IV. Fourth and Fifth Causes of Action (Wrongful Termination and Retaliation in Violation of Wis. Stat. § 111.322(1) & (3))

Sections § 111.322(1) & (3) of Wisconsin Statutes, respectively, prohibit an employer from: "refus[ing] to hire, employ, admit or license any individual, to bar or terminate from employment . . . any individual" on the basis of that individual's sex; and "discharg[ing] or otherwise discriminat[ing] against any individual because [she] has opposed any discriminatory practice under this subchapter or because [she] has made a complaint, testified or assisted in any proceeding under this subchapter." For reasons

already set forth above, defendant discriminated against, harassed, terminated, and then refused to rehire plaintiffs on the basis of their sex and in retaliation for their complaining about this sexual harassment. As a direct result of this illegal conduct, plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, including loss of wages and psychological abuse. Defendant's unlawful actions were intentional, willful, malicious, or done with reckless disregard to plaintiffs' right to be free from discrimination and harassment based on sex, as well as retaliation for complaining about this sexual harassment. Plaintiffs are also entitled to their reasonable attorneys' fees and costs of suit.

V.  **Sixth Cause of Action (Failure to Release Employee Records in Violation of Wis. Stat. § 103.13)**

On March 5, 2019, plaintiffs' counsel sent a request to defendant, through Regional Manager Hebert pursuant to Wis. Stat. § 103.13 to inspect the employee records for Allison and Chelsea Shubat. Defendant failed to allow plaintiffs or their counsel to review these employee files timely and continues to refuse to do so through today. Pursuant to § 103.13(8), each day that defendant fails to allow plaintiffs' access to their employee files is a continuing violation subject to a fine of not less than $10.00 nor more than $100.00 per day.

## VI. Damages Award

Consistent with the findings above and additional evidence admitted during the October 2, 2019, hearing, the court will award the monetary damages and fines set forth below.[1]

ORDER

IT IS ORDERED THAT:

1) The following relief is awarded to plaintiffs Chelsea Shubat and Allison R. Shubat and against defendant Cave Enterprises Operations, LLC as follows:

   a) For past, lost wages effectively denied to plaintiff Chelsea Shubat by reason of defendant's unlawful actions, after deduction for amounts earned elsewhere since her termination, in an amount of $22,160;

   b) For past, lost wages effectively denied to plaintiff Allison R. Shubat by reason of defendant's unlawful actions, after deduction for amounts earned elsewhere since her termination, in an amount of $28,790;

   c) For future, lost wages effectively denied to plaintiff Chelsea Shubat by reason of defendant's unlawful actions, totaling one year's lost wages in an amount of $20,800;

   d) For future, lost wages effectively denied to plaintiff Allison R. Shubat by reason of defendant's unlawful actions, totaling one year's lost wages in an amount of $18,720;

   e) For compensatory damages for plaintiff Chelsea Shubat's emotional pain and suffering in an amount $70,000;

   f) For compensatory damages for plaintiff Allison R. Shubat's emotional pain and suffering in an amount $30,000;

   g) For punitive damages for plaintiff Chelsea Shubat in the amount $112,960;

---

[1] In addition to the damages and monetary fines awarded below, plaintiff may petition the court for an amended judgment reflecting (1) additional attorneys' fees and costs incurred in preparing for and participating in the default judgment hearing and in collecting this award; (2) the rolling monetary fine; and (3) any interest that may be due by statute.

h) For punitive damages for plaintiff Allison R. Shubat in the amount $77,510;

i) For fines owed to plaintiffs under Wis. Stat. § 103.13 totaling $1,360 for failing to comply between the March 5, 2019, and the filing of this lawsuit on July 19, 2019; $3,800 for failing to comply between the filing of this lawsuit and the date of final judgment; and an additional $100 per day from the date of final judgment and defendant's compliance with the requirements of § 103.13; and

j) For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k) and comparable state law set forth above to plaintiffs in the amount of $13,185.

2) The clerk of court is directed to enter judgment consistent with this order and close this case.

Entered this 4th day of October, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge