IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

CHELSEA SHUBAT and
ALLISON R. SHUBAT,

                                             OPINION AND ORDER

                   Plaintiffs,

                                         19-cv-588-wmc

      v.

CAVE ENTERPRISES OPERATIONS, LLC
d/b/a BURGER KING OF ASHLAND,

                   Defendant.
_____

On October 4, 2019, the court granted default judgment in favor of plaintiffs Chelsea Shubat and Allison R. Shubat against their former employer defendant Cave Enterprises, LLC. (Dkt. #20.) Final default judgment was entered five days later on October 9, 2019. However, defendant appeared in this case for the first time the following week and moved to vacate the default judgment under Federal Rules of Civil Procedure 55(c) and 60(b). (Dkt. #23.)[1] Because defendant has failed to establish excusable neglect, the court will deny its motion to vacate.

BACKGROUND

As set forth in the court's prior order granting default judgment, plaintiffs Chelsea and Allison Shubat brought this lawsuit under Title VII of the Civil Rights act of 1964, 42

---

[1] Defendant also filed motions to stay execution of the judgment under Rule 62(a) (dkt. #31) and to compel a return of assets (dkt. #32), although both were mooted by its later motion to withdraw the motion to stay in light of the parties' settlement with respect to a garnishment action. (Dkt. #34.)

U.S.C. § 2000e, *et seq.*, Wis. Stat. § 111.31, *et seq.*, and Wis. Stat. § 103.13, complaining of sexual harassment on the part of their former supervisor, the general manager of the Burger King in Ashland, Wisconsin, Jesse Walitshek, as well as retaliation in response to their complaining about his conduct to Chad Hebert, a Regional Manager for defendant Cave Enterprises Operations, LLC ("Cave Enterprises" or "Cave").   For purposes of service of process, defendant's registered agent in Wisconsin is Business Filings Incorporated, whose mailing address is 8020 Excelsior Dr., Suite 200, Madison, Wisconsin 53717.

On or about August 3, 2018, plaintiffs filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Wisconsin Department of Workforce Development Equal Rights Division ("ERD"), alleging discrimination in the form of harassment and retaliation against defendant.   On October 17, 2018, the ERD investigator issued initial determinations of Probable Cause on plaintiffs' complaints.   In the initial determinations, the ERD Officer noted that:   "During the course of this investigation, the Division made multiple requests for a position statement from Respondent.   Respondent failed to return correspondence." (Lindsey Aff., Exs. G, H (dkt. ##13-7, 13-8).)   On May 31, 2019, the EEOC issued a Notice of Right to Sue letter to both plaintiffs for the allegations contained in their August 3, 2018, complaints.

Plaintiffs filed their complaint in this court on July 19, 2019.   (Compl. (dkt. #1).)   On July 23, 2019, defendant was served by delivering the summons and complaint to Andria Gaulrapp at Business Filings Incorporated as the authorized agent of Cave Enterprises.   (Proof of Service (dkt. #3).)   After defendant failed to appear, answer or otherwise move by the due date of August 13.   Plaintiff filed a motion for entry of default

on August 21 (dkt. #4), and the clerk's office entered default as to defendant Cave Enterprises on August 29, 2019 (dkt. #8).  Plaintiffs then filed a motion for default judgment (dkt. #10), which was also mailed to defendant at the same address as service of the complaint and summons.  Following further mail notice to the defendant,[2] the court next held a hearing on the motion for default judgment on October 2 and granted that motion on October 4, 2019.  (Dkt. #20.)  Final default judgment was entered on October 9, 2019.  (Dkt. #21).

In its October 16, 2019, motion to vacate the default judgment, defendant explains that "Business Filings did not forward [the summons or complaint] or any other documents about this case to a person at Cave who understood them or the importance of them." (Def.'s Br. (dkt. #25) 3.)  Instead, the court documents were forwarded to Kirsten Smaizys-Huffman, the Director of Finance.  Smaizys-Huffman avers that while she is "responsible for paying invoices" and "ensuring that Cave files its annual reports in some of the States where Cave does business, including in the State of Wisconsin," her responsibilities "do not in any manner include monitoring lawsuits filed against Cave or accepting service of process for Cave."  (Smaizys-Huffman Aff. (dkt. #26) ¶ 2.)  For his part, Adam Velarde, the President of Cave, avers that he is the appropriate person who should have received these documents, and he only learned of this matter on October 8, 2019, when he was sent a Bloomberg Law Article about the default judgment award.  (Velarde Aff. (dkt. #27) ¶¶ 3, 12.)

---

[2] A copy of the text order scheduling the default judgment hearing was mailed to defendant at Business Filings' address in Madison, Wisconsin.

Defendant also represents that Chad Hebert, the Regional Manager for the Ashland Burger King, did not respond to plaintiff's counsel's calls because Attorney Lindsey "called him representing to be a trainee at the Ashland store." (Def.'s Br. (dkt. #25) 6.) Having initially misrepresented that he was a trainee, Hebert avers that he assumed all the calls from Lindsey were fraudulent and further that Lindsey "did not identify himself as a lawyer, much less a lawyer retained by plaintiffs." (Hebert Aff. (dkt. #28) ¶¶ 4, 7-8.)

In support of their motion for default judgment, plaintiffs' counsel submitted an affidavit showing detailed records of his attempts to contact Chad Hebert about plaintiffs' allegations of sexual harassment. As detailed in his records, Attorney Lindsey called Chad Hebert at least thirteen times between May 23, 2018, and May 31, 2019. (Lindsey Aff. (dkt. #13) ¶¶ 2-5; *Id.*, Ex. A (dkt. #13-1) (phone log).) On May 30, 2018, Attorney Lindsey also called and left a message at Burger King's corporate office. On May 31, 2018, Herbert responded in an email, identifying himself as the Director of Operations for the Duluth Burger Kings." (*Id.*, Ex. B (dkt. #13-2).) In the email, Herbert further states, "I am a bit confused because you claimed that you are a trainee there, and I know that to be false. We do not have anyone working for us by your name. Furthermore we do not have an employee named Chelsea working for us." (*Id.*)

On June 6, 2018, Lindsey responded to Hebert's email, memorializing his discussion with "the Ashland manager" that day, passing along his phone number, and attaching a letter, which begins, "I am an attorney representing Chelsea Shubat in her claims of discrimination, harassment and retaliation relating to her employment at the Burger King location in Ashland Wisconsin." (*Id.*, Ex. C (dkt. #13-3).) The letter goes on to state,

"Not only did you ignore Ms. Shubat's complaints, you have been consistently ignoring my correspondence and attempts to contact you regarding this issue." (*Id.*) The letter ends by informing Herbert of his intent to proceed with an administrative complaint if he does not contact him by June 8, 2018.

On June 7, Herbert responded with an email explaining, "[n]o harassment has been seen in the workplace," adding that plaintiffs were terminated because they were not reliable. (*Id.*, Ex. D (dkt. #13-4).) Herbert also attached the original notification he received from Burger King's corporate office apparently as a basis to explain his original confusion about Lindsey being a "trainee" rather than an "attorney": "Guest is a trainee at burger king. Guest call in to make the complain [sic] about se*ual harassment of an employee by the general manager. General manager's name is Jesse and the employee's name is Chelsea Shubat." (*Id.* at 3.)

## OPINION

Federal Rule of Civil Procedure 55(c) states in relevant part that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." In turn, Rule 60(b)(1) provides that "the court may relieve a party . . . from a final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect." The Seventh Circuit has interpreted these rules to require a party seeking to vacate a default order under Rule 55(c) to show: "(1) good cause for [its] default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 949 (7th Cir. 2020) (internal

citations and quotation marks omitted).  Moreover, "[t]he same requirements, although more strictly applies, must be made to set aside a default judgment under Rule 60(b)." *Id.* Finally, "[r]elief from default judgment will be granted only where actions leading to default were not willful, careless, or negligent, also referred to as 'excusable neglect.'" *Id.* (quoting *Johnson v. Gudmundsson*, 35 F.3d 1104, 1117 (7th Cir. 1994)).

Defendant Cave argues that its actions constitute excusable neglect, but that arguments fails for at least two core reasons. *First*, defendant does not dispute actual receipt of service of process.  Instead, defendant simply maintains that the summons and complaint and other court documents duly passed along by its designated agent in Wisconsin, went to Cave's Director of Finance, rather than its President.  How that corporate practice in any way excuses Cave is left unclear.  Regardless, the summons itself notifies defendant of its significance -- "[a] lawsuit has been filed against you" -- and of defendant's obligations -- "[w]ithin 21 days after service of this summons on you . . . , you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure."  (Dkt. #2.)  Moreover, even if Cave's neglect in advising its formally designated agent who should receive formal legal notice were somehow excusable, the employee who did receive the summons and complaint, Smaizys-Huffman, is *not* a low-level employee; she is the Director of Finance, who is responsible for completing annual reports and paying invoices, and obviously more than capable of reading and reacting to the straightforward directions in a summons, as well as appreciating the importance of doing so.  *Cf. In re Franklin-Lee Homes, Inc.*, 99 B.R. 710, 712 (Bankr. E.D.N.C. 1989) (refusing to find excusable neglect where complaint was received by a

"inexperienced and inadequately trained clerical worker" because defendant had failed to maintain "adequate procedures designed to insure that a legal complaint would receive the appropriate attention").

Ultimately Cave's President avers that he does "not know why Ms. Smaizys was designated as the representative of Cave to receive documents from Business Filings, and I do not know who designated Ms. Smaizys to receive documents from Business Filings." (Velarde Aff. (dkt. #27) ¶ 10.)  But this statement simply highlights the obvious: defendant failed to implement basic internal procedures for managing receipt of court documents.  In designating Business Filings as its registered agent in Wisconsin, it was also incumbent on defendant to ensure receipt of court filings, a procedure President Velarde avers that Cave has now established.  While the court is incredulous that the designated agent's directing legal papers to Cave's Director of Finance was pure happenstance, much less that its Director would just ignore those papers, neither belief is ultimately required to reject defendant's excuse.  As plaintiffs point out in their opposition, there are numerous cases in which courts have declined to find excusable negligence where the "events causing the default judgment were within the meaningful control of the defaulting party." *Colonial Penn Life Ins. Co. v. Assured Enterprises, Ltd.*, 151 F.R.D. 91, 94 (N.D. Ill. 1993) (citing *N. Cent. Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164, 167 (7th Cir. 1988)).  (*See also* Pls.' Opp'n (dkt. #29) 4-5 (citing cases).)  So, too, here.

*Second*, while the court agrees that Attorney Lindsey's repeated contacts, or attempted contacts, on behalf of Chelsea Shubat with Cave's Regional Manager Chad Hebert does not constitute proper service of process, the record reflects that Hebert was

aware of plaintiffs' complaints about sexual harassment and repeatedly opted to ignore them, even ignoring communications from the EEOC or Wisconsin Department of Workforce Development seeking a response to plaintiffs' allegations at the administrative level.  Indeed, the court cannot help but be struck by Hebert's representations in his affidavit submitted in support of defendant's motion to vacate, in which he continues to rely on his initial misunderstanding -- even labeling it a "misrepresentation" -- that Attorney Lindsey introduced himself in an initial phone call as a trainee, rather than an attorney, and further failed to identify himself as an attorney in subsequent messages.

All of this is completely belied by the written record, which shows that Lindsey immediately clarified to Hebert in a letter that he was an attorney -- not a trainee as the defendant's corporate message service had misidentified him -- and explained in detail plaintiffs' allegations.  Even ignoring these obvious misrepresentations in Hebert's affidavit, the communications attached to Attorney Lindsey's declaration in support of default judgment establish that Cave was actually aware of the substance of plaintiff's complaints through its Regional Manager Chad Hebert, which provides further support for finding that defendant simply failed to set up basic internal procedures for responding to employee complaints, has failed to train even senior employees on how to handle legal proceedings, or even worse, has developed a culture to ignore their importance.  Regardless, none of these failures constitute excusable neglect.

Having found that defendant failed to establish excusable neglect, the court need not consider the other two requirements, except to note that apparently once the President of the company because aware of the lawsuit, defendant acted promptly to vacate the

judgment. While defendant has also offered a possible, meritorious defense to plaintiff's claims based on termination, defendant fails to respond to the substance of plaintiffs' claims that they were subjected to sexual harassment and a hostile work environment.[3]

Finally, defendant challenges the amount of damages awarded -- roughly $400,000 -- on the basis that it exceeds the amount stated in the cover sheet to the complaint, listing requested damages as $250,000. In support of this argument, defendant points to Wisconsin Statutes § 806.01(c), which states in pertinent part that "[i]f there be no answer, the relief granted to the plaintiff shall not exceed that demanded in the complaint." Putting aside the fact that there was no specific amount demanded in the complaint itself -- rather, the demand was made in the civil cover sheet -- defendant maintains that the court should apply this limit because it exercised its supplemental jurisdiction over state law claims. (Def.'s Br. (dkt. #25) 9.) If the court only awarded damages under state law, this argument may have traction, but plaintiffs principally pursued claims under Title VII, and the court awarded damages for violations of Title VII. The only damages award specific to a state law claim was the $100 per day that the court ordered defendant to pay until it was in compliance with the requirements of § 806.01. (Default Judgment (dkt. #21) ¶ c.) That amount, however, is not likely to exceed $250,000, especially if defendant acts promptly to bring itself into compliance.

---

[3] Defendant also attempts to raise a defense as to plaintiff's state law claim under Wisconsin Statute § 103.13, which requires an "employer, upon the request of an employee, which the employer may require the employee to make in writing, permit the employee to inspect any personnel documents . . . ." Defendant argues that plaintiffs have failed to state a claim because their attorney requested the personnel documents in an email. Obviously, their attorney was acting on their behalf, and defendant fails to point to any caselaw supporting a position that the request must be made personally or that an email would not satisfy any written requirement.

Still, the Seventh Circuit rightly cautions against awarding excessive damages, explaining that it may be appropriate to set aside a default judgment, but not entry of default itself, if the award of damages is excessive. *See Sims v. EGA Prod., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007) ("Damages disproportionate to the wrong afford good *cause* for judicial action [under Rule 55(c)], even though there is no good *excuse* for the defendant's inaction to the case.").  As a matter of law, therefore, the court *could* withdraw the clerk's entry of final default judgment and allow defendant to contest damages, even though the only arguments defendant presents in its brief are the rejected § 806.01(c) argument and pointing out the obvious requirement that a plaintiff must still prove up damages.  Here, plaintiffs did just that in their motion for default judgment, supporting materials, and by providing detailed testimony during the court's hearing.  The court previously set forth extensive findings of facts and its legal basis for its damages award.  (10/4/19 Op. & Order (dkt. #20).)  Other than pointing to an inapplicable state law, defendant offers no just cause to challenge the award as excessive or otherwise allow it to participate at this late date.  Having required both the court and plaintiffs to expend the time and effort to get to a final default judgment before bothering to participate, despite repeated formal and actual notice, the court is neither inclined to reward its negligence, or worse cynicism, nor to require plaintiffs to have to endure further distress, trauma, or other injury.  (*See id*.)

ORDER

IT IS ORDERED that:

1) Defendant Cave Enterprises Operations, LLC's motion to vacate default judgment (dkt. #23) is DENIED.

2)  Defendant's motion to stay pursuant to Rule 62(A) and motion to compel return of assets (dkt. ##31, 32) are DENIED.

3)  Defendant's motion to withdraw motion to stay (dkt. #34) is GRANTED.

4)  Plaintiff's request for status update (dkt. #35) is DENIED.

Entered this 11th day of January, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge